UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| MICHAEL ALETUM | * | |
|     Plaintiff | * | |
|     v. | * | Civil Case No. 8:20-cv-03041-TDC |
| OPUSING, LLC | * | |
|     Defendant | * | |

### REPORT AND RECOMMENDATION

This is a case arising out of alleged violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213. Pending before the Court is Plaintiff Michael Aletum's Motion for Default Judgment. ECF No. 32. For the reasons discussed below, I recommend that the Motion be granted and that Mr. Aletum be awarded damages in the amount of $23,360.

### BACKGROUND

Plaintiff Michael Aletum is a resident of Maryland who is deaf, ECF No. 23, at 2, and, according to his testimony during a hearing on the present motion, communicates primarily through American Sign Language ("ASL"). Based on the allegations in his Amended Complaint as well as his hearing testimony, Mr. Aletum holds a high school diploma and attended college, and from 2005 through 2015, he "held various food industry and warehouse positions across several organizations and companies." *Id.*; *see id.* at 2–4. Mr. Aletum alleges that Opusing, LLC ("Opusing"), is a "digital transformation and staffing firm based in Boston, Massachusetts," that provides recruitment services in "various locations and states," including Maryland. *Id.* at 2. Mr. Aletum claims that Opusing is subject to the Americans with Disabilities Act. *Id.*

1

Mr. Aletum alleges that on September 11, 2019, he received an email from Prince,[1] a Technical Recruiter at Opusing, inviting him to apply for an Assembler position at an Eaton Corporation facility in Beltsville, Maryland. *See id.* at 4–5. According to Mr. Aletum, the email indicated that the Assembler position was a twelve-month contract position with a pay rate of $12.00 per hour, and that the available shifts were a day shift from 7:00 a.m. to 3:30 p.m. and a night shift from 11:00 p.m. to 7:30 a.m. *See id.* at 4–5. The email also provided the basic qualifications required for and the essential functions of the position. *See id.* at 5–6. Based on his educational attainment and previous work experience, Mr. Aletum claims that he was fully qualified for the Assembler position. *See id.*

After reviewing the email, Mr. Aletum called Prince through Purple Video Relay Service ("PVRS"), which provides ASL interpreters to help facilitate telephone communications for people who are deaf. *See id.* at 6. Mr. Aletum alleges that PVRS, before connecting a call, "announces . . . that the user is deaf and uses sign language," and thus Prince "was fully aware of Mr. Aletum['s] disability." *Id.* Following the call, Prince allegedly sent Mr. Aletum a second email "memorializing" their conversation, indicating that he "would submit Mr. Aletum's profile to Eaton," *id.*, instructing Mr. Aletum to fill out a questionnaire, and requesting that Mr. Aletum submit an updated resume, *id.* at 6–7. Mr. Aletum claims that a few hours later, however, he received a phone call from Opusing stating that he was "'no longer needed' due to his status as a deaf person" and advising him that Opusing "did not consider applicants who have a hearing disability." *Id.* at 7.

On January 7, 2020, Mr. Aletum filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission, and he received a notice of right to sue on August 17,

---

[1] Mr. Aletum does not provide a last name for this individual.

2

2020. *Id.*; ECF No. 1-1, at 1. Mr. Aletum filed a pro se Complaint in this Court on October 19, 2020, ECF No. 1, served process on Opusing via certified mail on April 13, 2021, and returned the executed Summons on May 3, 2021, *see* ECF No. 7, at 1–3. On August 6, 2021, counsel entered an appearance on behalf of Mr. Aletum. ECF No. 9. Upon the Court's instruction, ECF No. 11, Mr. Aletum moved for a Clerk's Entry of Default against Opusing on November 10, 2021, ECF No. 12, and the Clerk entered an Order of Default on November 19, 2021, ECF No. 13. Mr. Aletum, again on the Court's instruction, ECF No. 16, filed a Motion for Default Judgment on April 19, 2022, ECF No. 17. On December 21, 2022, the Court denied Mr. Aletum's Motion for Default Judgment. ECF No. 19. The Court explained that although the facts alleged in Mr. Aletum's Complaint "suggest[ed] troubling behavior," the Complaint did not identify "any specific causes of action" against Opusing, was "threadbare in its telling," and "[did] not provide the Court with sufficient detail to find for [Mr. Aletum]." ECF No. 18, at 3. The Court thus granted Mr. Aletum fourteen days to file an Amended Complaint. *Id.* at 4.

After receiving an extension of time, ECF No. 22, Mr. Aletum filed an Amended Complaint on January 14, 2023, claiming that Opusing discriminated against him in violation of the Americans with Disabilities Act, *see* ECF No. 23, at 7–8. On October 26, 2023, upon Order of the Court, ECF Nos. 25, 26, Mr. Aletum filed a second Motion for Clerk's Entry of Default, ECF No. 27, and the Clerk entered an Order of Default on October 31, 2023, ECF No. 28. The Court, on December 18, 2023, and again on January 17, 2024, ordered Mr. Aletum to file a Motion for Default Judgment, ECF Nos. 30, 31, and Mr. Aletum filed a second Motion for Default Judgment on January 31, 2024, ECF No. 32. Opusing has not entered an appearance, answered Mr. Aletum's Complaint or Amended Complaint, or otherwise taken any action in this case.

On February 20, 2024, the case was assigned to my Chambers for the limited purpose of a Report and Recommendation on this pending Motion for Default Judgment. ECF No. 33. Pursuant to Federal Rule of Civil Procedure 55(b)(2)(B), the Court held a hearing on the Motion on June 12, 2024. ECF No. 36.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 55(b) governs the entry of default judgments, which may be entered by the Clerk of the Court "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," and the defendant is in default for failing to appear. Fed. R. Civ. P. 55(b)(1). The entry of default judgment is a matter within the discretion of the Court. *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002)). Although "the Fourth Circuit has a 'strong policy that cases be decided on the merits,'" *Disney Enters., Inc. v. Delane*, 446 F. Supp. 2d 402, 405 (D. Md. 2006) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), "default judgment is available when the 'adversary process has been halted because of an essentially unresponsive party,'" *id.* (quoting *Lawbaugh*, 359 F. Supp. 2d at 421); *see also Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896–97 (4th Cir. 1987) (upholding a default judgment awarded where the defendant lost its summons and did not respond within the proper period); *Disney Enters.*, 446 F. Supp. 2d at 405, 408 (finding appropriate the entry of default judgment where the defendant had been properly served with the complaint and did not respond, despite repeated attempts to contact him).

When considering a motion for default judgment, the Court takes as true all well-pleaded factual allegations in the complaint, other than those pertaining to damages. Fed. R. Civ. P. 8(b)(6) ("An allegation — other than one relating to the amount of damages — is admitted if a responsive pleading is required and the allegation is not denied."); *Ryan v. Homecomings Fin. Network*, 253

4

F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975))). "Unless a plaintiff claims liquidated damages, the mere assertion of a sum in a complaint does not make the sum 'certain.'" *Auld v. Montoya-Hernandez*, No. ELH-11-0969, 2012 WL 1379452, at *3 (D. Md. Apr. 17, 2012) (quoting *Hartford Fin. Servs. Grp., Inc. v. Carl J. Meil, Jr., Inc.*, No. WDQ-10-2720, 2011 WL 1743177, at *3 (D. Md. May 5, 2011)). Thus, under Federal Rule of Civil Procedure 55(b)(2), a court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." *Diane Sales, Inc. v. Tic Toc Watch Repair & Distribs., Inc.*, No. 1:20-cv-00058-JMC, 2020 WL 6707857, at *2 (D. Md. Nov. 16, 2020) (omissions in original) (quoting Fed. R. Civ. P. 55(b)(2)).

In the Fourth Circuit, district courts analyzing requests for default judgment have applied the standards articulated by the United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to determine whether allegations within the complaint are "well-pleaded." *See, e.g.*, *Russell v. Railey*, No. DKC 08-2468, 2012 WL 1190972, at *2–3 (D. Md. Apr. 9, 2012); *United States v. Nazarian*, No. DKC 10-2962, 2011 WL 5149832, at *2–3 (D. Md. Oct. 27, 2011); *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011). "[W]here a complaint offers only 'labels and conclusions' or 'naked assertion[s] devoid of further factual enhancement,' the allegations therein are not well-pleaded" and, consistent with the Court's discretion regarding the entry of default judgment, relief based on those allegations should be denied. *E.g.*, *Russell*, 2012 WL 1190972, at *3 (second alteration in original) (quoting *Balt. Line Handling Co.*, 771 F. Supp. 2d at 544).

## ANALYSIS

### I. Jurisdiction and Venue

As a threshold matter, to enter a default judgment pursuant to Federal Rule of Civil Procedure 55(b), the court must have jurisdiction and the venue must be proper. *See, e.g.*, *Wells Fargo Bank, N.A. v. Gateway Int'l Logistics, Inc.*, No. 1:22-cv-02487-JRR, 2023 WL 2473255, at *3 (D. Md. Mar. 13, 2023). Because Mr. Aletum's claims arise under the Americans with Disabilities Act, a federal statute, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

Although the Fourth Circuit has not determined whether a district court must examine personal jurisdiction before entering a default judgment, "it has held that 'any judgment entered against a defendant over whom the Court does not have personal jurisdiction is void.'" *Aerotek, Inc. v. Bernard Irby Inc.*, 670 F. Supp. 3d 230, 232 (D. Md. 2023) (quoting *Gonzalez v. Spunk Indus., Inc.*, Civ. No. ELH-18-2935, 2019 WL 4392951, at *3 (D. Md. Sept. 13, 2019)). Therefore, it is "prudent" for a court, prior to entering a default judgment, to assess whether it can exercise personal jurisdiction over the defendant. *Id.* (quoting *Gonzalez*, 2019 WL 4392951, at *3). When a court examines the existence of personal jurisdiction "on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id.* at 233 (quoting *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005)).

To exercise personal jurisdiction over a nonresident defendant, the court "must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute, pursuant to Federal Rule of Civil Procedure 4(k)(1)(A); and (2) the exercise of jurisdiction conforms to the

Fourteenth Amendment's due process requirements." *Gonzalez*, 2019 WL 4392951, at *3 (citing *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)). Maryland courts "have interpreted the Maryland long-arm statute to reach as far as the Constitution allows"; thus, "the statutory and due process components of the personal jurisdiction analysis merge." *Davis v. Horton*, No. PJM-23-0078, 2024 WL 839045, at *6 (D. Md. Feb. 27, 2024) (citing *ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002)). A court's exercise of personal jurisdiction comports with due process "if the defendant has 'certain minimum contacts' with the forum state, 'such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

A court may have either general or specific personal jurisdiction over a defendant. *See, e.g.*, *Perry v. Nat'l Ass'n of Home Builders of U.S.*, No. TDC-20-0454, 2020 WL 5759766, at *3 (D. Md. Sept. 28, 2020). General jurisdiction exists where a nonresident defendant's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Id.* (quoting *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017)). With respect to a corporate defendant, general jurisdiction "typically exists in the state in which it was incorporated or in which its principal place of business is located," *id.*, though it may also exist in "exceptional case[s]" where the corporate defendant has "substantial" operations in the forum state, *id.* (quoting *BNSF Ry. Co.*, 581 U.S. at 413). Specific jurisdiction exists where a defendant has "'purposefully established minimum contacts in the forum State' such 'that [it] should reasonably anticipate being haled into court there.'" *Id.* (alteration in original) (quoting *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016)). To determine whether specific jurisdiction exists, a court "must consider '(1) the extent to which the defendant purposefully availed itself of the privilege of

7

conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" *Id.* (quoting *Perdue Foods*, 814 F.3d at 189).

Based on the allegations in Mr. Aletum's Amended Complaint, the Court does not have general jurisdiction over Opusing. According to Mr. Aletum, Opusing's principal place of business is located in Boston, Massachusetts, *see* ECF No. 23, at 2; ECF No. 32-1, at 2, and Mr. Aletum does not indicate in which state Opusing is incorporated. Additionally, the Court does not have enough information regarding the extent of Opusing's operations in Maryland to conclude that these operations are sufficiently "substantial." *Perry*, 2020 WL 5759766, at *3 (quoting *BNSF Ry. Co.*, 581 U.S. at 413).

With respect to specific jurisdiction, Mr. Aletum has sufficiently alleged contacts between Opusing and Maryland that establish purposeful availment and relate to his claims. "Purposeful availment . . . focuses on contacts that the [d]efendant purposefully initiated to target the forum state," and courts have found purposeful availment where an employer "intentionally directed contact" through, for instance, "some combination of affirmatively recruiting the employee while a resident of the forum state, contracting to have the employee work from the forum state, having the employee attend meetings with business prospects within the forum state, and supplying the employee with equipment to do work there." *Id.* at *4 (collecting cases). According to Mr. Aletum's Amended Complaint, Opusing initiated contact with Mr. Aletum, a Maryland resident, to refer him for a job located in Beltsville, Maryland, *see* ECF No. 23, at 2, 4–5, thereby purposefully availing itself of the forum state. Mr. Aletum's claim arises out of this referral, which Opusing allegedly rescinded via a telephone call once it became aware of Mr. Aletum's disability. *See id.* at 8. Based on these allegations, the Court may exercise specific jurisdiction over Opusing.

8

*See, e.g.*, *Cowgill v. Mgmt. Placement*, No. 76-0191, 1976 WL 13306, at *1–2 (D.D.C. May 12, 1976) (holding that court had personal jurisdiction over staffing agency where staffing agency "recruit[ed] personnel for clients located in the greater metropolitan Washington, D.C. area," contracted with a trade association to recruit an attorney to work in D.C., and placed an advertisement for the position in a D.C. newspaper, and where the alleged discrimination "took place, in part, during several telephone calls between defendant and plaintiff which either originated in or were placed to the District of Columbia," *id.* at *2).

Finally, venue is proper in this judicial district. Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *Lupo v. JPMorgan Chase Bank, N.A.*, No. DKC 14-0475, 2015 WL 410273, at *4 (D. Md. Jan. 26, 2015) (quoting 28 U.S.C. § 1391(b)(2)). Here, the alleged conduct giving rise to Mr. Aletum's claim occurred via a series of email and telephone communications with Mr. Aletum in Montgomery County, Maryland. *See* ECF No. 23, at 1–2, 4, 6–7; *Lupo*, 2015 WL 410273, at *4 (finding proper venue where nearly all correspondence related to the dispute giving rise to plaintiff's claims occurred through mail, fax, and telephone calls to or from the judicial district).

## II.     ADA Claims

Mr. Aletum alleges that Opusing violated the Americans with Disabilities Act ("ADA") both by failing to hire him for the Assembler position "due to his status as a deaf person," ECF No. 23, at 8, and by "fail[ing] to engage in the interactive process and . . . provide effective accommodations," *id.* at 9. As a result of this conduct, Mr. Aletum claims that he "has suffered damages including but not limited to emotional distress, embarrassment, anxiety, nervousness, stress, and depression." *Id.* Additionally, Mr. Aletum testified at the hearing on June 12, 2024, that he suffered economic harm and was unable to pay his bills on time. As relief, Mr. Aletum

9

requests "all equitable monetary damages available under the law" and, specifically, "compensatory and punitive damages in the amount of three hundred thousand dollars ($300,000.00)." *Id.*

The ADA prohibits employers with at least fifteen employees from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *see id.* § 12111(5)(A). A qualified individual is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires," *id.* § 12111(8), and an individual has a disability under the ADA if they have "a physical or mental impairment that substantially limits one or more major life activities," have "a record of such an impairment," or are "regarded as having such an impairment," *id.* § 12102(1).

Under the ADA, unlawful discrimination includes the failure to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee," unless the employer can show that the accommodation "would impose an undue hardship." *Id.* § 12112(b)(5)(A). If an employee informs their employer that they need an accommodation but "it is not immediately obvious what accommodation would be appropriate, the ADA requires that the employer and employee engage in an interactive process to identify a reasonable accommodation." *Fleetwood v. Harford Sys. Inc.*, 380 F. Supp. 2d 688, 701 (D. Md. 2005) (citing *Bryant v. Better Bus. Bureau of Greater Md., Inc.*, 923 F. Supp. 720, 737 (D. Md. 1996); 29 C.F.R. § 1630.2(o)(3)).

Upon finding that an employer has intentionally discriminated against a plaintiff in violation of the ADA, a court may award the plaintiff damages, including back pay or lost wages,

*see, e.g.*, *U.S. Equal Emp. Opportunity Comm'n v. MSDS Consultant Servs., LLC*, No. 8:18-cv-02917-PX, 2021 WL 6074204, at *2 (D. Md. Dec. 22, 2021) (citing 42 U.S.C. § 12117(a)), compensatory damages for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses," *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 179–80 (4th Cir. 2001) (quoting 42 U.S.C. § 1981a(b)(3)), and punitive damages, *see, e.g.*, *Equal Emp. Opportunity Comm'n v. Fed. Express Corp.*, 513 F.3d 360, 371 (4th Cir. 2008) (citing 42 U.S.C. § 1981a(b)(1)).

### A. Failure to Hire

To state a claim for unlawful discrimination under the ADA, Mr. Aletum must show that he has a disability. Mr. Aletum alleges that his deafness is a recognized disability under the ADA, *see* ECF No. 23, at 2, 8, and indeed, the ADA and its implementing regulations state that hearing is a major life activity, *see* 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(i). Accordingly, courts have "easily concluded" that deafness is a disability under the ADA. *E.g.*, *Aletum v. Anchor Staffing Agency, Inc.*, No. 8:19-cv-02719-AAQ, 2023 WL 2648780, at *3 (D. Md. Mar. 27, 2023); *see also, e.g.*, *Searls v. Johns Hopkins Hosp.*, 158 F. Supp. 3d 427, 434 (D. Md. 2016) (noting that the parties did not dispute that plaintiff's deafness was a disability "within the meaning of the ADA"). Thus, the Court concludes that Mr. Aletum has a disability under the ADA.

Additionally, Mr. Aletum must show that he was qualified for the Assembler position, in that he could perform the essential functions of the position with or without a reasonable accommodation. Based on his previous work experience in the food industry and warehouse positions, Mr. Aletum alleges that he was "fully qualified" for the Assembler position. ECF No. 23, at 5. Specifically, Mr. Aletum performed many of the essential functions of the Assembler position — such as ensuring compliance with safety procedures, managing and inspecting

materials and deliveries, and using computer systems to scan and verify information — in his past roles as a Package Handler for FedEx Express Package System and as a Warehouse Supervisor/Order Builder for Coca-Cola Refreshments.  *See id.* at 3–5.  Moreover, according to Mr. Aletum's Amended Complaint, Opusing believed that Mr. Aletum was a "suitable candidate" after viewing his resume, *id.* at 4, and Opusing has not disputed Mr. Aletum's qualifications.  Mr. Aletum has therefore sufficiently pled that he was qualified for the Assembler position.

Mr. Aletum claims that Opusing violated the ADA by failing to hire him for the Assembler position on the basis of his disability.  *See id.* at 8.  A plaintiff alleging discrimination under the ADA may, "[a]s with any claim of discrimination, . . . prove his case by direct or indirect evidence, or by use of the burden-shifting scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."  *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 303 (4th Cir. 1998).  Direct evidence of discrimination is "evidence of conduct or statements that both reflect directly on the alleged discriminatory attitude and . . . bear directly on the contested employment decision."  *Gott v. Town of Chesapeake Beach*, 44 F. Supp. 3d 610, 615 (D. Md. 2014) (quoting *Johnson v. Mechs. & Farmers Bank*, 309 F. App'x 675, 681 (4th Cir. 2009) (per curiam)).  Mr. Aletum offers direct evidence of discrimination: specifically, Mr. Aletum alleges that after he communicated with an Opusing representative using PVRS, Opusing told him he was "no longer needed" for the Assembler position "due to his status as a deaf person" and that Opusing does "not consider applicants who have a hearing disability."  ECF No. 23, at 8; *see, e.g.*, *Gott*, 44 F. Supp. 3d at 615–16 (finding direct evidence of age discrimination where manager stated that she was not going to rehire plaintiff because she was "just looking for younger people," *id.* at 615 (quoting Plaintiff's Opposition to Defendant's Motion for Summary Judgment at 4, *Gott*, 44 F. Supp. 3d 610 (No. WDQ-12-03387), ECF No. 19)); *Monk v. Potter*, 723 F. Supp. 2d 860, 875 n.4 (E.D. Va. 2010) ("A

plaintiff may assert direct evidence by, for example, producing statements by the plaintiff's supervisor that unlawful discrimination was the motive for an adverse employment action."). Again, Opusing has not disputed any of Mr. Aletum's allegations. Therefore, Mr. Aletum has sufficiently pled that Opusing failed to hire him for the Assembler position on the basis of his disability and, therefore, in violation of the ADA.

### B. Failure to Accommodate

Mr. Aletum also claims that Opusing violated the ADA by "fail[ing] to engage in the interactive process and . . . provide effective accommodations." ECF No. 23, at 9. To trigger an employer's duty to provide a reasonable accommodation or engage in the interactive process to identify a reasonable accommodation, an applicant or employee must communicate both his disability and his desire for an accommodation to the employer. *See, e.g.*, *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 346–47 (4th Cir. 2013); *Campbell v. Becton, Dickinson & Co.*, No. 1:22-cv-03043-ELH, 2024 WL 1299354, at *25 (D. Md. Mar. 27, 2024). While Mr. Aletum has alleged that Opusing was aware of his disability, his Amended Complaint contains no allegations that he in any way communicated his desire for an accommodation. Mr. Aletum has thus failed to state a claim that Opusing violated the ADA by failing to accommodate his disability. *See, e.g.*, *Gladden v. Winston Salem State Univ.*, 495 F. Supp. 2d 517, 520, 522–23 (M.D.N.C. 2007) (concluding that plaintiff did not state claim for failure to accommodate where plaintiff informed employer that, due to continued medical problems, he would not be able to return to work by required date but did not request any accommodation that would enable him to return).

### III. Damages

Since Mr. Aletum has sufficiently pled that Opusing violated the ADA by failing to offer him the Assembler position on the basis of his disability, he is entitled to recover damages. In his

Amended Complaint, Mr. Aletum requests "all equitable monetary damages available under the law" and, specifically, "compensatory and punitive damages in the amount of three hundred thousand dollars ($300,000.00)," ECF No. 23, at 9, though he offers no facts, law, or any explanation supporting this amount. Thus, pursuant to its authority under Federal Rule of Civil Procedure 55(b)(2)(B), the Court held a hearing on June 12, 2024, to determine the amount of damages to which Mr. Aletum is entitled. ECF No. 36; *see* Fed. R. Civ. P. 55(b)(2)(B).

To start, Mr. Aletum is entitled to recover back pay. *See* 42 U.S.C. § 1981a(a)(2) (entitling ADA plaintiff to recover "any relief authorized by section 706(g) of the Civil Rights Act of 1964"); 42 U.S.C. § 2000e-5(g)(1) (authorizing court to award back pay if it finds that employer intentionally engaged in an unlawful employment practice); *see also, e.g.*, *Prudencio v. Runyon*, 3 F. Supp. 2d 703, 705 (W.D. Va. 1998) ("Successful plaintiffs in a discriminatory failure to hire case are entitled to . . . back pay . . . ."). The purpose of a back pay award is to make "victims of unlawful discrimination whole" by restoring them to the position they would have been in had the unlawful discrimination never occurred. *Hylind v. Xerox Corp.*, 31 F. Supp. 3d 729, 734 (D. Md. 2014) (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975)). Accordingly, "the award of back pay should be the difference between what the employee would have earned had the wrongful conduct not occurred from the [date of the adverse employment decision] to judgment, and the actual earnings during that period." *Clark v. ACE AFSCME Local 2250*, No. GJH-17-3748, 2022 WL 1500665, at *1 (D. Md. May 12, 2022) (quoting *Ford v. Rigidply Rafters, Inc.*, 984 F. Supp. 386, 389 (D. Md. 1997)). In his Amended Complaint, Mr. Aletum alleges that the rate of pay for the Assembler position was $12.00 per hour and that Opusing informed him on September 11, 2019, that it would not be proceeding with his application. *See* ECF No. 23, at 5, 7. At the hearing, Mr. Aletum testified that on October 30, 2019, he started a full-time job with a

pay rate of $12.12 per hour.  Thus, I recommend a back pay award of $3,360, the amount Mr. Aletum would have made working forty hours per week in the Assembler position from September 11, 2019, until October 30, 2019.

Mr. Aletum is also entitled to recover compensatory damages.  *See* 42 U.S.C. § 1981a(a)(2).  As an initial matter, the amount of noneconomic damages a plaintiff can recover under the ADA is limited by the size of the defendant, such that where the defendant had "more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, damages may not exceed $50,000." *Equal Emp. Opportunity Comm'n v. Carter Behav. Health Servs., Inc.*, No. 4:09-CV-122-F, 2011 WL 5325485, at *5 (E.D.N.C. Oct. 7, 2011) (citing 42 U.S.C. § 1981a(b)(3)(A)).  Here, Mr. Aletum alleges that Opusing is subject to the ADA, ECF No. 23, at 2, but he provides no indication of how many employees Opusing employed in the current or preceding calendar year.  Consequently, the maximum amount of noneconomic damages Mr. Aletum may recover is $50,000.  *See Carter Behav. Health Servs.*, 2011 WL 5325485, at *6.

Mr. Aletum alleges in his Amended Complaint and testified at the hearing that Opusing's discriminatory conduct caused him emotional distress.  Specifically, in his Amended Complaint, Mr. Aletum claims that he "has suffered . . . embarrassment, anxiety, nervousness, stress, and depression."  ECF No. 23, at 9.  At the hearing, Mr. Aletum testified that it was "hurtful" and "incredibly frustrating" not to be selected for the Assembler position simply because he is deaf, and that he felt depressed and lost motivation to search for other jobs because he worried other employers would similarly discriminate against him.  However, Mr. Aletum testified that he did not seek or receive any psychological treatment or other medical care as a result of Opusing's conduct.  Accordingly, I recommend an award of $20,000 in compensatory damages for Mr. Aletum's emotional distress.  *See, e.g.*, *Brown v. Punch Bowl Arlington, LLC*, No. 1:21-cv-00416,

2021 WL 6618456, at *4 (E.D. Va. Dec. 29, 2021) (recommending award of $20,000 in emotional distress damages where plaintiff "allege[d] that he suffered physical manifestations of emotional distress, humiliation, and shame" but provided neither "medical documentation or proof that he sought medical assistance in light of his emotional distress" nor "declarations or affidavits of friends or family members noting any change"), *report and recommendation adopted*, No. 1:21-cv-416, 2022 WL 188136 (E.D. Va. Jan. 20, 2022); *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1278–79 (D. Kan. 2016) (awarding $25,000 in compensatory damages where plaintiff alleged that she suffered "humiliation, stress and depression" after employer demoted and constructively discharged her based on her disability).

Finally, Mr. Aletum seeks punitive damages. Courts in the Fourth Circuit have held that punitive damages are "an extraordinary remedy . . . designed to punish and deter particularly egregious conduct," and while "any form of discrimination constitutes reprehensible and abhorrent conduct, not every lawsuit . . . calls for . . . this extraordinary remedy." *Cline*, 144 F.3d at 306 (first and second omissions in original) (quoting *Stephens v. S. Atl. Canners, Inc. (Coca Cola Co.)*, 848 F.2d 484, 489–90 (4th Cir. 1988)). In particular, a plaintiff seeking punitive damages under the ADA "must prove that his employer acted with the requisite state of mind — that is, that it 'engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of [the plaintiff].'" *Fed. Express*, 513 F.3d at 371 (omission and alteration in original) (quoting 42 U.S.C. § 1981a(b)(1)). Additionally, the plaintiff must provide sufficient evidence "to impute punitive damages liability to the employer," *id.* (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 539 (1999)), such that "'an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good-faith efforts to comply with' the applicable federal law," *id.* at 371–72

(quoting *Kolstad*, 527 U.S. at 545).  Thus, to justify a punitive damages award on the basis of the employer's reckless indifference, the plaintiff must present sufficient evidence for a reasonable jury to find:

> (1) That the employer's decision maker discriminated in the face of a perceived risk that the decision would violate federal law; (2) That the decision maker was a principal or served the employer in a managerial capacity; (3) That the decision maker acted within the scope of his employment in making the challenged decision; and (4) That the employer failed to engage in good-faith efforts to comply with the law.

*Id.* at 372 (citing *Lowery v. Circuit City Stores, Inc.*, 206 F.3d 431, 443–45 (4th Cir. 2000)).

Here, Mr. Aletum has not presented sufficient evidence to justify an award of punitive damages.  Mr. Aletum does not allege that Opusing acted with "actual malice" in failing to hire him for the Assembler position.  Likewise, Mr. Aletum has not put forth sufficient evidence that Opusing acted with reckless indifference to his rights under the ADA.  Although Mr. Aletum claims that he was initially contacted by Prince, a Technical Recruiter for Opusing, ECF No. 23, at 4, he does not provide any information regarding the individual who told him that he was "no longer needed" for the Assembler position and that Opusing does "not consider applicants who have a hearing disability," *id.* at 7.  Critically, Mr. Aletum does not indicate whether this latter individual was a principal or managerial agent acting within the scope of their authority, and he does not provide any evidence that the individual knew they "may be acting in violation of federal law." *MSDS Consultant Servs.*, 2021 WL 2634571, at *6 (quoting *Equal Emp. Opportunity Comm'n v. CDG Mgmt., LLC*, No. RDB-08-2562, 2010 WL 4904440, at *6 (D. Md. Nov. 24, 2010)).

In sum, I recommend awarding Mr. Aletum $3,360 in back pay and $20,000 in compensatory damages, for a total of $23,360.

**CONCLUSION**

For the aforementioned reasons, it is recommended that Mr. Aletum's Motion for Default Judgment be granted and that Mr. Aletum be awarded $23,360 in damages.

Objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

Date:  July 16, 2024                                    _____/s/_____
                                                        Ajmel A. Quereshi
                                                        U.S. Magistrate Judge